UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE | BANKRUPTCY NO. |
| STERLING SMITH, SR. | 04-10120 |
| DEBTOR | CHAPTER 7 |
| | SECTION "B" |
| **LULA STEWART and** | |
| **JAMES STEWART** | |
| PLAINTIFFS | |
| VERSUS | **ADVERSARY NO.** |
| | **04-1069** |
| **STERLING SMITH, SR.** | |
| DEFENDANT | |

## REASONS FOR ORDER

This matter came before the Court on November 1, 2004 on the Complaint and Objection to Discharge of Debtor ("Complaint") filed by Lula and James Stewart (jointly "Plaintiffs") on April 5, 2004. The fundamental issue is whether Sterling Smith, Sr. ("Debtor") should be denied a discharge under 11 USC 727 ("§ 727") for failing to list the following in his bankruptcy schedules: i) his New Orleans Employers- International Longshoremen's Association (NOE-ILA) pension plan; ii) his interest in a class-action lawsuit; iii) his ownership of certain automobiles; iv) the transfer of his interest in property located at 7400 Scottsdale Drive, New Orleans, Louisiana ("7400 Scottsdale Drive"), to his former wife within one year before the filing of his petition. Also, the Debtor listed 7400 Scottsdale Drive as his current address, and as an asset in his schedules, despite having transferred his interest to his former wife. The two related issues are: 1) whether the Debtor's failure to list assets and/or interests in his bankruptcy schedules can be excused due to lack of knowledge on his part; and 2) whether such failure must be harmful to the estate to justify denial of a discharge. For the following

1

reasons the Court will deny the Debtor's discharge under both § 727 (a)(2) and § 727(a)(4).

## Background

On August 24, 2000 the Debtor and Lula Smith were involved in a motor vehicle accident, as a result of which Lula Smith sustained injuries and was hospitalized.[1] The Debtor's insurer and/or LIGA paid $ 19,900 out of the total hospital bill of $ 53,008.50.[2] The deficiency amounts to a claim against the Debtor, which is why the Plaintiffs were listed as unsecured creditors in the Debtor's bankruptcy schedules.[3]

On June 23, 2000 the Debtor acquired 7400 Scottsdale Drive from Gertrude Cummings Polk via cash sale.[4] On the same day the Debtor transferred ownership to Glenda Williams, his former wife, via counter letter, recorded as Conveyance Office Instrument No. 208446.[5] It appears that Gertrude Cummings Polk had already donated 7400 Scottsdale Drive to Netricia Cummings via Conveyance Office Instrument No. 201481, dated November 18, 1999.[6] Netricia Cummings transferred ownership to the Debtor via quitclaim deed, dated January 26, 2001, thereby terminating any interest she

---

1 Joint Pre-Trial Order, filed 10/22/04.

2 *Id*.

3 Exhibit 1; Exhibit 2 for amended schedules.

4 Exhibit 4, Cash Sale of Property by Gertrude Cummings Polk to Sterling Smith, Sr, verified on July 6, 2000.

5 Exhibit 4, referenced in Act of Quitclaim, verified on June 18, 2001.

6 Exhibit 4, referenced in Act of Quitclaim, verified on April 18, 2001.

had in the property.[7] On January 26, 2001 Glenda Williams also executed a quitclaim deed in favor of the Debtor, transferring 7400 Scottsdale Drive to him.[8] The final transfer took place on September 5, 2003, whereby the Debtor deeded 7400 Scottsdale Drive to Glenda Williams.[9] The end result of all these transfers, despite conflicting testimony, is that the Debtor was the owner of record of 7400 Scottsdale Drive from January 26, 2001, when both Netricia Cummings and Glenda Williams executed quitclaim deeds in his favor, until September 5, 2003, when the Debtor transferred the property back to Glenda Williams.

On January 8, 2004 the Debtor filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code, where he stated that he both owned and resided in 7400 Scottsdale Drive.[10] The Debtor subsequently amended his petition, listing his current address as 3221 Piety Street, New Orleans, LA ("3221 Piety Street"), but did not amend Schedule A, thus continuing to state that he owned 7400 Scottsdale Drive.[11]

The Debtor initially listed a 2002 Mercedes Benz as the only automobile that he owned.[12] In his amended schedules he included two other automobiles- an old Cadillac

---

7 Exhibit 4, Act of Quitclaim, verified on April 18, 2001.

8 Exhibit 4, Act of Quitclaim, verified on June 18, 2001.

9 Exhibit 4, Quit Claim Deed, verified on September 10, 2003.

10 Exhibit 1.

11 *Id.*

12 *Id.*

Limousine and a Dodge Dynasty ("the other cars") as items of personal property that he owned.[13]

As a member of the NOE-ILA the Debtor is entitled to a pension benefit under the Association's defined benefit pension plan, based on a certain amount of hours worked for a number of years.[14] The Debtor did not list the pension plan in either his original or amended schedules. The Debtor testified that during his twenty-nine years of employment he was not aware of the existence of such a pension plan because the plan does not entail defined contributions from its participants, and thus required no action on his part.[15]

The Debtor is a plaintiff in the ongoing class action known as the New Orleans Tank Car Litigation, which resulted from a 1989 tank car accident.[16] The Debtor did not include this interest in his bankruptcy schedules. He testified that the last correspondence he received from the attorney handling the lawsuit was about 2000-2001, from which he assumed that the litigation had terminated and he was not to expect any further developments.[17]

---

13 Exhibit 2.

14 Exhibit 5; Testimony of James Stewart, 11/01/04.

15 Exhibit 5.

16 Exhibit 3; Testimony of Sterling Smith, 11/01/04.

17 Although the 2000-2001 correspondence referred to by the Debtor was not produced, there was an October 28, 2004 fax from the Deputy Special Master to the Plaintiffs' lawyer stating that the Debtor had been paid all sums "currently due" and that the litigation was ongoing but the Deputy Special Master had "no idea" what the income would be as far as the Debtor was concerned. See Exhibit 3.

Analysis

*1. Section 727(a)(2)*

The Plaintiffs allege that the Debtor transferred his interest in 7400 Scottsdale Drive within one year of filing the petition in order to defraud them, which gives the Court grounds to deny a discharge under § 727(a)(2)(A). In cases involving a transfer of property the creditor must prove that the debtor 1) transferred property; 2) belonging to the debtor; 3) within one year before the filing of the petition; 4) with intent to hinder, delay, or defraud a creditor or officer of the estate.[18] Evidence of actual intent is required, although it can be inferred from the actions of the debtor or proved by circumstantial evidence.[19]

In the present case it is clear that the Debtor transferred property that he owned, within one year prior to filing his bankruptcy petition. However, the Plaintiffs have not proved to the Court's satisfaction that the motivation behind this transfer was to defraud a creditor or an officer of the estate. The evidence shows a history of such transfers between the Debtor and Glenda Williams since 2000. Glenda Williams testified that it was always her property and that the latest transfer was necessitated by the divorce agreement between the Debtor and herself. Although the divorce agreement was not introduced into evidence and no further proof was presented in support of this assertion, it casts sufficient doubt as to the Debtor's motivation for making the transfer to result in the Court not being convinced that the Debtor had the requisite intent to perpetrate fraud on a creditor or officer of the estate.

---

18 *In re Chastant*, 873 F.2d 89, 90 (5th Cir. 1989).

19 *Id* at 91.

Section 727(a)(2)(A) also includes concealment of property as grounds for denial of discharge. With regard to concealment, the Plaintiffs must prove that 1) the debtor concealed property; 2) that was property of the estate; 3) the concealment occurred within one year before the bankruptcy filing; and 4) the concealment was made with the intent to hinder, delay, or defraud a creditor.[20]

The Debtor's failure to disclose his ownership of the other cars in his schedules may constitute concealment under § 727(a)(2)(A).[21] During trial Plaintiffs' counsel asserted that the Debtor amended his schedules only after independent investigation revealed the existence of the other cars, and after the Trustee informed the Debtor of the risk of being denied a discharge. Because the Debtor did not offer a convincing explanation for his omissions, the Court finds that the Debtor's intent in failing to disclose initially the existence of the other cars was to defraud the Plaintiffs. The Debtor exercised the right granted by Federal Rule of Bankruptcy Procedure 1009 to amend his schedules, but such an amendment does not cleanse the original statements if they are found to be tainted.[22]

*2. Section 727(a)(4)*

Section 727(a)(4)(A) authorizes the Court to deny a discharge to a debtor who knowingly and fraudulently makes a false oath in or in connection with the case. In order to prevail under this section the creditor must prove that 1) the debtor made a statement

---

20 *In re Brown*, 108 F.3d 1290, 1293 (10th Cir. 1997).

21 *In re Dias*, 95 B.R. 419, 426 (Bankr. N. D. Tex. 1988) (stating that an omission of property from schedules may be both a false oath and concealment).

22 *In re Gipe*, 157 B.R. 171, 178 (Bankr. M.D. Fla. 1993) (citing *In re Muscatell*, 113 Bankr. 172 (Bankr. M.D. Fla. 1990)).

under oath, 2) that was false, 3) the debtor knew the statement was false, 4) the debtor made the statement with fraudulent intent, and 5) the statement was materially related to the bankruptcy case. [23] False oaths sufficient to justify the denial of discharge include false statements or omissions in the debtor's schedules. [24]

The analysis of what constitutes intent to defraud with respect to § 727(a)(2) is largely applicable to § 727(a)(4).[25] But § 727(a)(4) does not limit the objects of the debtor's intent to defrauding a creditor or officer of the estate.[26] Under § 727(a)(4) "the existence of more than one falsehood, together with the failure to clear up all the inconsistencies when filing amended schedules, may constitute reckless indifference to the truth, and, therefore, the requisite intent to deceive."[27] For these reasons, the Court believes this to be the more appropriate section rather than § 727(a)(2)(A) to analyze those omissions that the Debtor did not rectify in his amended schedules.

In addition to the other cars, the Debtor also failed to list his NOE-ILA pension plan and his interest in the class-action lawsuit. The Court is mindful of the fact that a discharge should not be denied where a false statement is the result of a simple or honest mistake, or inadvertence. [28] The Debtor testified that he was simply unaware of the

---

23 *In re Beaubouef*, 966 F.2d 174, 178 (5th Cir. 1992).

24 *Id*; *In re Dias*, 95 B.R. at 426.

25 6 *Collier on Bankruptcy on Bankruptcy* ¶ 727.04 [a][1] (Matthew Bender 15th ed. rev. 2004).

26 *Id.*

27 *Olendorf v. Buckman*, 173 B.R. 99, 105 (E.D. La. 1994) (citing *In re Beaubouef*, 966 F.2d at 178).

28 *In re Townsley*, 195 B.R. 54, 65 (Bankr. E.D. Tex 1996).

existence of the NOE-ILA pension plan, and that he assumed that the class-action lawsuit was no longer current. The Court is not convinced this was a truthful explanation.

Section 541(a) requires the debtor to list "all legal or equitable interests of the debtor in property as of the commencement of the case." Although the Debtor's NOE-ILA pension plan would have been exempted from the property of the estate, the Code does not give the Debtor the choice whether to list it or not. In fact, failure to list potentially exempt property may result in it being barred from exemption. [29] Although the Debtor may have been unaware of the precise details regarding his entitlement to pension benefits, it is the "responsibility of the Debtor to make full and complete disclosure to the creditors of all matters which are relevant to the Debtor's rights to a discharge." [30] The Court is unconvinced that during the Debtor's twenty-nine years of employment as a longshoreman he was unaware of the existence of a pension plan. The letter from the NOE-ILA pension plan administrator, filed as Exhibit 5, is one example of the type of notice that all active participants received. It was the Debtor's responsibility to acquire the additional information necessary to make full disclosure regarding his pension plan interest.

The Debtor has an absolute duty to report all interests in property, even if he believes those assets are worthless or are unavailable to the bankruptcy estate.[31] In that

---

29 *In re Yonikus*, 996 F.2d 866 (7th Cir. 1993).

30 *In re Gipe*, 157 B.R. 171, 178 (Bankr. M.D. Fla. 1993).

31 *In re Yonikus*, 974 F.2d 901, 904 (7th Cir. 1992).

sense, the Debtor was obligated to inquire about the status of the class-action lawsuit that he has an interest in, rather than assuming that all proceedings had terminated.

Additionally, in his original schedules the Debtor listed himself as the owner of 7400 Scottsdale Drive, even though he had already deeded ownership to Glenda Williams. The Debtor did not subsequently amend Schedule A. [32] Hence, although the Debtor had already divested himself of ownership of 7400 Scottsdale Drive, he did not take the necessary steps to ensure his schedules were truthful. Although not necessarily prejudicial to the estate, this is a material omission on the Debtor's behalf. [33]

The elements of an objection to discharge must be proved by a preponderance of the evidence.[34] One or perhaps even two of the omissions here might not warrant denial of Debtor's discharge. The Court must, however, consider the totality of the circumstances, which include several omissions and a failure to convince the court that all of the omissions were inadvertent or an oversight. [35] The Plaintiffs carried their burden by proving a prima facie case under both §727(a)(2)(A) and § 727(a)(4)(A), and the Debtor failed to counter that prima facie case by credible evidence.

## Conclusion

Because the Debtor has failed to offer credible explanations for mistakes and omissions in his schedules, and has manifested a tendency for misrepresentation and

---

32 Exhibit 2, Summary of Schedules.

33 *In re Hughes*, 184 B.R. 902, 906 (Bankr. E.D. La. 1995).

34 *In re Beaubouef*, 966 F.2d 174, 178 (5th Cir. 1992); *In re Swift*, 3 F.3d 929 (5th Cir. 1993).

35 *See In re Barber*, No. 6:03-bk-11735-ABB, 2004 Bankr. LEXIS 1897, at *4 (M.D. Fla. Oct. 6, 2004); In re Manhattan Inv. Fund Ltd.*,* 310 B.R. 500, 505 (Bankr. S.D.N.Y. 2002) (stating that "given the difficulties in establishing a transferor's actual intent, courts often look at the **totality of the circumstances.)**

evasion, the Court will deny the Debtor's discharge under § 727. A separate order will be entered accordingly.

New Orleans, Louisiana, April 4, 2005.

_____
Jerry A. Brown
U.S. Bankruptcy Judge